**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ALJEANIA S. ROBINSON,                    Case No. 1:10-cv-00689

    Plaintiff,                              Beckwith, J.
                                                        Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Aljeania S. Robinson, filed this Social Security appeal challenging the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review. As explained below, I conclude that the Administrative Law Judge's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

Plaintiff filed applications for disability insurance benefits (DIB) and for supplemental security income (SSI) on April 20, 2007. In her applications, Plaintiff alleged a disability onset date of November 29, 2006, due to multiple sclerosis ("MS") and asthma. (Tr. 1-5). Plaintiff was born in 1971 and was 35 years old at the original onset date. (Tr. 6).

1

After Plaintiff's claims were denied initially and upon reconsideration, Plaintiff filed a request to present her case *de novo* before an Administrative Law Judge ("ALJ.") (Tr. 3). Represented by counsel, Plaintiff attended a disability hearing held in Cincinnati, Ohio on October 13, 2009 by ALJ Larry A. Temin. In addition to testimony from Plaintiff, the ALJ heard testimony from medical expert Dr. Hershel Goren and vocational expert Robert Breslin. At the hearing, Plaintiff amended her claim to reflect a new onset date of March 29, 2007.

The ALJ and counsel questioned Plaintiff about her mobility, daily routine, frequency of doctor's appointments, and past work experience. (Tr. 35-42). Plaintiff complained of fatigue, muscle stiffness, discomfort when walking or sitting for long periods of time, and the need to use an aid such as a walker when ambulating. (Tr. 13-16, 18, 22, 30-31). Plaintiff also testified that she occasionally required use of a catheter and suffers from constipation. (Tr. 43). Dr. Goren testified that, based on his examination of Plaintiff's medical record, Plaintiff does not meet or equal the listing for MS (11.09) or asthma (3.03). (Tr. 35-36).

On November 12, 2009, the ALJ entered his decision denying Plaintiff's DIB and SSI applications. (Doc. 4-2 at 14-23). The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Defendant's final determination.

In his "Findings," representing the rationale of his decision, the ALJ determined that Plaintiff meets the insured status requirements through December 31, 2011, that she has not engaged in substantial gainful activity since March 30, 2007, and that she has severe impairments of multiple sclerosis and asthma. (*Id.* at 16). The ALJ further determined that Plaintiff does not have an impairment or combination of impairments

that meets or equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 18). The ALJ concluded that Plaintiff retained the following residual functional capacity ("RFC") to perform full-time work except as follows:

> She can lift/carry/push/pull up to ten pounds occasionally and five pounds frequently. In an eight-hour workday, she can stand and/or walk at total of two hours; she can stand/walk for ten minutes at a time without an assistive device and for one hour at a time with an assistive device, and then must be able to sit for five minutes. She can only occasionally stoop, kneel, and crouch. She should never crawl, balance, climb ladders/ropes/scaffolds, or climb ramps or stairs. She should not work at unprotected heights or around hazardous machinery. She should have no concentrated exposure to extreme cold, extreme heat, or fumes, noxious odors, dusts, or gases.

(*Id*. at 19).

Although the ALJ concluded that Plaintiff's RFC did not permit her to perform any of her past relevant work, he determined that based upon her age, education, work experience and RFC, she could perform jobs "that exist in significant numbers in the national economy." (*Id.* at 22). The ALJ's conclusions were based in part on testimony from the vocational expert that Plaintiff's prior work history ranged from skilled to unskilled work. (Tr. 45-46). Mr. Breslin also testified that Plaintiff is qualified to work as an order clerk, final assembler, or inspector. (Tr. 47-48). In the local labor force of Southwestern Ohio, Northern Kentucky, and Southeastern Indiana, there are 2,000, 1,300, and 300 positions for order clerks, final assemblers, and inspectors, respectively. (*Id*.). Therefore, the ALJ found Plaintiff not to be disabled.

On appeal to this court, Plaintiff maintains that the ALJ erred by: 1) improperly assessing Plaintiff's bowel and bladder issues; 2) discounting Plaintiff's need for frequent medical appointments; and 3) inadequately assessing Plaintiff's pain and credibility. (Doc. 6).

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A). In this case, Plaintiff alleges that the three identified errors at the fourth and fifth steps of the sequential analysis require this court to reverse the Commissioner's decision.

### B. Specific Errors

### 1. Failure to Consider Bladder and Bowel Impairment

Plaintiff first complains that the ALJ failed "to consider the effects and the impact that the urinary incontinence, retention, frequency, fecal incontinence, a neurogenic bladder, and the neurogenic bowel problems that the Plaintiff experiences might have on her ability to perform work on a sustained basis, 8 hours per day, 5 days a week." (Doc. 6 at 2-3). Plaintiff does not contest the ALJ's conclusion that her bladder and bowel problems were not "severe" impairments under Step 2 of the sequential benefits analysis. (Doc. 10 at 2). Rather, Plaintiff argues that the ALJ did not appropriately consider these non-severe impairments under the RFC analysis.

Regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone . . . ." 20 C.F.R. § 404.1545(e). The ALJ makes an RFC determination based on "all of the relevant medical and other evidence. In general, [the claimant is] responsible for providing the evidence we will use to make a finding about [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(a)(3).

The standard for considering non-severe impairments is described in 20 C.F.R. § 404.1545. Social Security Ruling 96-8p serves to clarify the regulatory analysis. Under SSR 96-8p, the SSA seeks to strike a balance between the inclusion of non-severe impairments and the exclusion of non-impairment conditions in the RFC analysis. In general, SSR 96-7p explains that only non-severe impairments that emanate from a

disease or injury must be considered.  General body condition or habitus cannot be considered under the RFC analysis.

Plaintiff testified that she sees a bladder specialist about every three months. (Tr. 58).  Since 2008, she has experienced difficulty urinating and has needed to catheterize herself about six times.  (Tr. 43-44).  However, she testified that she currently takes medication for her urination problem, which is "working pretty good so far."  (Tr. 49).  When questioned by her attorney about her constipation issues, Plaintiff elaborated: "It's kind of getting worse because . . . I have to use a suppository like three times a week." (Tr. 48).  When questioned by counsel, the medical expert allowed that Plaintiff's bladder and bowel issues "can be" related to her MS. (Tr. 67).

Medical records indicate that doctors Plaintiff saw at the University Hospital Ambulatory Center were made aware of some ongoing bladder and constipation issues.  (Tr. 405-417).  In addition, University Hospital Emergency Room Records from November 27, 2007 reflect that the Plaintiff complained of fecal incontinence and constipation, diagnosed as "neurogenic bowel likely related to MS" even though another portion of the same record states "MRI and hx do <u>not</u> support MS exacerbation."  (Tr. 384, emphasis added).  In 2007, Plaintiff was prescribed "lactulose" and "dulclox."  (*Id.*).

Notes from Dr. Maria J. Melanson of Aring Neurology, dated January 8, 2009 and May 14, 2009, mention Plaintiff's continuing bladder issues. (Tr. 574, "felt tingling after urinating twice"; Tr. 549, "She complains of some urinary frequency and urgency and constipation.").  The most recent medical record, also from Dr. Melanson and dated August 17, 2009, states that Plaintiff experienced pain with urination after infusions of her MS medication, and that infusions were stopped as a result of this and other side

7

effects. (Tr. 604). Under the gastrointestinal heading of the "Review of Systems" section, Dr. Melanson noted Plaintiff's constipation. (*Id.*). However, Dr. Melanson's notes reflect no specific treatment of, or limitations resulting from, Plaintiff's bladder or bowel problems.

Under the RFC analysis, it is clear that the ALJ considered the entirety of Plaintiff's complaints, including those related to her bowel and bladder problems. When noting the list of the Plaintiff's medications, for example, the ALJ specifically identified "other medications for *bladder, bowel*, asthmatic, and hypertensive problems." (Doc. 4-2 at 20)(emphasis added). The ALJ's failure to include any specific limitation in Plaintiff's RFC relating to Plaintiff's bladder or bowel issues does not constitute error. The ALJ followed proper procedure by considering the non-severe bladder and bowel impairments when making the RFC determination, and his conclusion that the bladder and bowel problems were not severe enough to impact the Plaintiff's RFC is supported by substantial evidence in the record. *See* 20 C.F.R. § 404.1545.

The ALJ looked to the Plaintiff's and the medical expert's testimony concerning her bladder and bowel problems, as well as to medical records relating to her condition. It is noteworthy that Plaintiff herself testified that medication for her urinary issues was "working pretty good." Plaintiff's testimony also suggested that her constipation, while requiring additional medication over time, was treatable. It is noteworthy that no medical source has ever opined that Plaintiff would experience any work-related restrictions as a result of her bladder or bowel problems; in fact, Plaintiff herself neither testified as to any limitations nor presents any evidence or argument to this Court concerning specific limitations that might result from those issues.

In her reply memorandum, Plaintiff complains generally that "[o]ther than a few brief remarks," devoted to the subject, the ALJ did not "*fully* analyze the bowel and bladder problems." (Doc. 10 at 2, emphasis added). As support, Plaintiff points to a handful of medical records. However, those medical records do not support any additional work-related limitations, but refer only to a diagnosis and/or symptoms such as "*occasional* urgency and inability to void." (*See* Tr. 406, emphasis added). Given the substantial evidence in the record that the issues were either resolved with medication[1] and/or caused no ongoing limitations that would impact Plaintiff's ability to work, the ALJ committed no error in confining his discussion to "brief remarks."

### 2. The Frequency of Medical Treatment

Plaintiff additionally argues that the ALJ erred by improperly rejecting Plaintiff's argument that she is unemployable due to the frequency of her medical appointments. (Doc. 6 at 4). Plaintiff argues "that the record unequivocally establishes ...Plaintiff's medical necessity for treatment which, because of its frequency, duration, and disruption to the Plaintiff's routing [sic], significantly interfered and currently interferes with her ability to perform work on a sustained basis." (Doc. 6 at 5). Substantial evidence exists to support the ALJ's rejection of Plaintiff's argument in this respect.

No physician or other medical source opined about the likelihood of absenteeism required for Plaintiff's medical treatment. Plaintiff testified briefly that she is "constantly at the hospital" as many as "six times a month" if her appointments for occupational therapy, physical therapy, and quarterly check-up appointments are all considered. (Tr.

---

[1] Some of the records upon which Plaintiff relies reflect a pre-treatment state in 2007, when she was "waiting for a urology referral." (Tr. 367). Again, Plaintiff's hearing testimony suggested that her urinary issues were largely resolved to the extent that her medication was "working pretty good." Other records reflected a difficulty with fecal incontinence in 2007, that appears to have been secondary to Plaintiff's primary complaint of and treatment for constipation.

9

58-59). However, Plaintiff also testified that her physical and occupational therapy appointments were sporadic and temporary in nature, continuing only "for about three months" at a time. (Tr. 58). The issue was addressed by the ALJ when he asked the vocational expert ("VE") a general question about whether Plaintiff could miss two to three days of work per month, whereupon the vocational expert responded: "It would certainly affect the ability to maintain employment in those jobs, yes, sir. I don't think any employer that would employ those types of individuals would allow that level of absenteeism." (Tr. 74).

As another court explained in rejecting a claimant's argument concerning absenteeism on similar facts:

> Though a treating physician's opinion regarding a plaintiff's expected rate of absenteeism may be entitled to deference, there was no such opinion from a treating physician in this case. *See Sharp v. Barnhart*, 152 F3d. Appx. 503, 510 (6th Cir. Oct. 26, 2005)(unpublished)(quoting *Abendroth v. Barnhart*, 26 Fed. Appx. 580 (7th Cir. Jan. 31, 2002)...The VE simply made a general statement that if the rate of absenteeism exceeded two days per month, disciplinary actions or termination would result.

*Walker v. Astrue*, 2008 WL 4722121 at *12 (M.D. Tenn., Oct. 21, 2008).

Following the October 13, 2009 hearing, Plaintiff's counsel filed a post-hearing brief in which he followed up on the VE's testimony by more specifically arguing that Plaintiff's need for frequent medical treatment would create a level of absenteeism incompatible with the ability to work. In support of his post-hearing argument, counsel submitted a tally of Plaintiff's medical appointments over a 28-month period from May 2007 to August 2009. (Tr. 236-237).

The ALJ noted, as does this Court, that records submitted by counsel reflect that the amount of medical treatment sought by Plaintiff each month was extremely variable.

Although Plaintiff sought medical treatment (including physical therapy) as many as eight times a month in two of the listed months, in three of the referenced months she sought no medical treatment at all, and in seven months she had only one medical or therapy visit. (*Id.*).

After considering the testimony of the vocational expert and the post-hearing evidence of medical treatment submitted by counsel, the ALJ rejected Plaintiff's contention that she required such frequent medical treatment as to render her unemployable. (Doc. 4-2 at 20). The burden to prove disability lies with the Plaintiff, and this Court will not disturb a decision that lies within the "zone of choice" even if substantial evidence exists to support a different conclusion.

In this case, the ALJ's decision clearly was supported by substantial evidence, as he explained in his written opinion:

> For one thing, the very figures provided by the claimant's representative indicate many months in which there were no treatments or only one treatment.
>
> However, it cannot be concluded that even for the months in which there were two or more treatments that such treatments were secondary to the claimant's medically determinable impairments and would have required absenteeism from work. On August 15 and August 24, 2007, the claimant went to the dermatology clinic at the University problem for [sic] problem unrelated to multiple sclerosis, her 20 year history of thinning hair (Exhibit B9F/7). On September 7, 2007, the claimant was seen at the University Hospital with a complaint of back spasms (Exhibit B12F/22). On February 7, 2008, the claimant went to the University Hospital for eye pain, which was not found to be secondary to multiple sclerosis (Exhibit B12F/4). On June 5, 2009, the claimant was seen at the Obstetrics and Gynecology Center of the University Hospital Clinics for her annual gynecological examination (Exhibit B17F/3).

(Doc. 4-2 at 8).

The ALJ pointed out that many of Plaintiff's doctor's visits were for issues unrelated to her severe impairments of asthma or MS, and that the nature of some visits ostensibly related to her MS was "not always clear." By way of example concerning the latter category, the ALJ noted: "The claimant was seen on several occasions for bowel and bladder problems, but it cannot be definitely included that each such problem was secondary to multiple sclerosis." (Doc. 4-2 at 21).

The ALJ concluded:

> Finally, it is by no means clear that all the visits necessarily would have interfered with work. For example, the claimant was seen for therapy at Drake Center. (Exhibit B18F). There is nothing in the record to show that, were the claimant working, she would not have been able to schedule such visits in nonwork times, since they were clearly of an elective nature from the point of view of scheduling.

(*Id.*).

Plaintiff argues that there is evidence to support a finding that the bladder and bowel problems can be attributed to Plaintiff's MS, because at least some medical records refer to those issues as "likely" related to Plaintiff's MS. In any event, Plaintiff argues that SSR 96-8p requires consideration of "frequency of treatment" without regard to the nature of the treatment provided.

While I agree that "frequency of treatment" must be considered, consideration of the frequency of treatment does not mean that an ALJ must accept wholesale Plaintiff's testimony that she has a medical need for treatment during work hours "constantly" or at least "six times a month." In fact, the ALJ carefully considered the issue but found that Plaintiff's records as a whole do not support the need for the frequency of ongoing medical treatment during work hours that Plaintiff claims that she requires. For example, the ALJ determined that much of Plaintiff's past medical treatment, particularly

for annual gynecological visits or elective hair loss treatment, could be scheduled during non-work hours. Other visits for therapy appeared to be of a sporadic or temporary nature.

When asked a hypothetical question encompassing limitations that the ALJ found to be credible, the vocational expert testified that jobs existed that Plaintiff could perform. The fact that the VE more generally testified that she might not be able to maintain employment if she were required to miss work 2-3 work days per month is irrelevant, because substantial evidence supports the ALJ's evaluation of her historical need for medical treatment as a whole. *See Carrelli v. Comm'r of Soc. Sec.*, 390 F3d. App'x 429 (6th Cir. 2010)(only limitations that the ALJ found to be credible need be considered). Because substantial evidence exists to support the ALJ's conclusions concerning the number and nature of medical visits made by Plaintiff over time, the ALJ's conclusion that Plaintiff can maintain employment despite the need for some ongoing medical care does not require reversal by this Court.

### 3. Plaintiff's Credibility

The ALJ's assessment of Plaintiff's need for frequent medical treatment bears upon Plaintiff's last assertion of error, in which she contends that the ALJ erred in finding her testimony that she cannot work, due to severe MS symptoms, to be not fully credible. Although a credibility determination must be supported by substantial evidence, the ALJ's assessment of credibility is afforded particular "weight and deference, ...since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

A disability claim can be supported by a claimant's subjective complaints, as long

as there is objective medical evidence of the underlying medical condition in the record. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). However, "an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004).

Plaintiff argues the ALJ failed to properly evaluate her subjective complaints regarding the severity of her symptoms of MS, including muscle stiffness, weakness, severe fatigue, poor balance, and bladder problems. At the evidentiary hearing, Plaintiff testified:

> I'm losing, my legs get weak plus I'm losing my balance . . .Because my legs will start, my right leg start dragging and it will get tired and weak . . .I have a problem going up the steps because I have to kind of like throw my right leg up and then use the left leg . . . And I have a tingling sensation [in my hand] . . . I'm also not using my legs as much . . . the real hard part would be the standing.

(Tr. at 39, 41, 42, 46, 48). Plaintiff also testified that she uses a walker with wheels and an attached seat when she leaves her house, and a cane while inside her home. (Tr. 39-40). When Plaintiff goes grocery shopping, she testified that she requires an electric cart. (*Id.*).

In her Statement of Errors, Plaintiff refers to a report from Dr. Ravi N. Samy, dated June 11, 2007, which notes that Plaintiff's "imbalance/dizziness" are " likely MS related." (Tr. 457). However, Dr. Samy's report does not indicate that Plaintiff has any

specific walking or lifting restrictions not otherwise included in the RFC determined by the ALJ. Plaintiff's most recent medical visit with Dr. Melanson of Aring Neurology on August 17, 2009 also reflects no additional limitations, despite Plaintiff's subjective reports that her right hand and walking had grown worse. (*See* Tr. 62-65). In fact, the medical expert, Dr. Goren, testified that Dr. Melanson's August 2009 examination findings were "close to normal." (Tr. 62, 604.)

The medical expert referred back to Plaintiff's medical history concerning Plaintiff's need for ambulatory aids and overall symptoms. For example, progress notes dated June 17, 2008 from the University Hospital Ambulatory Center suggest the Plaintiff was not using assistive devices at that time. (Tr. 64, 470-471). Plaintiff did use ambulatory aids during a three-day hospitalization in August 2008 when her "MS [was] acting up." (Tr. 64, 479). However, subsequent clinical records dated January and August, 2009 again fail to show the use of any ambulatory aid. (Tr. 62-64, 574-575). The medical expert testified that "there were . . . clear cut conflicts between the testimony and the record, so I went with the record. Your honor will have to decide on the credibility of the testimony." (Tr. 66). When the ALJ asked for clarification, the medical expert pointed specifically to conflicts between Plaintiff's testimony and medical records concerning her gait, her use of her right hand, and "need for a walker." (*Id.*). After the medical expert identified these conflicts, the ALJ asked Plaintiff follow-up questions about her alleged need for a walker since 2007. (Tr. 40). In response, Plaintiff modified her earlier testimony, suggesting that she had not required use of a walker from October 2008 through August 2009, when the medicine she had been prescribed was "working pretty good, so I didn't really have to use anything." (Tr. 63).

15

Despite the medical expert's testimony that Plaintiff's records did not demonstrate any clear need for an assistive ambulatory device, the ALJ nonetheless partially credited Plaintiff's testimony that she currently requires a walker or other ambulatory device for any significant exertion. Thus, in formulating Plaintiff's RFC, the ALJ specifically found that Plaintiff could only stand or walk for ten minutes without an assistive device, and that she could only stand and/or walk for about one hour at a time with an assistive device. (Doc. 4-2 at 19, Tr. 73).

I find no error in the ALJ's conclusions that "the limitations described by the claimant are not wholly consistent with the medical evidence," and that no objective evidence in the record supported Plaintiff's testimony concerning "extreme limitations" caused by Plaintiff's MS. (Doc. 4-2 at 20). The ALJ specifically pointed to clinical records which indicated that "the claimant was not using an ambulatory aid." (Doc. 4-2 at 20.). Plaintiff's own testimony was inconsistent. The ALJ also concluded that "from the examinations there is no conflict between the lack of a need for an aid and the strength described." (*Id.*). In short, medical records, the testimony of the medical expert, and the testimony of Plaintiff herself all comprise substantial evidence to support the ALJ's credibility determination.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                             */s Stephanie K. Bowman*
                                             Stephanie K. Bowman
                                             United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ALJEANIA S. ROBINSON,                       Case No. 1:10-cv-00689

    Plaintiff,                                     Beckwith, J.
                                                         Bowman, M.J.

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b)(2), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).