```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                           WESTERN DIVISION
```

Aljeania S. Robinson,           )
                                )
          Plaintiff,            ) Case No. 1:10-CV-689
                                )
    vs.                         )
                                )
Michael J. Astrue,              )
Commissioner of Social          )
Security,                       )
                                )
          Defendant.            )

O R D E R

This matter is before the Court on Magistrate Judge Bowman's Report and Recommendation of October 12, 2011 (Doc. No. 11) and Plaintiff Aljeania S. Robinson's objections to the Report and Recommendation (Doc. No. 12).  In her Report and Recommendation, Magistrate Judge Bowman concluded that the Administrative Law Judge's ("ALJ's") determination that Plaintiff is not disabled under the Social Security regulations, and therefore is not entitled to receive disability insurance benefits and supplemental security income, is supported by substantial evidence.  Therefore, Judge Bowman recommended that the ALJ's decision be affirmed and that this case be closed on the docket of the Court.  For the reasons that follow, Plaintiff's objections to the Report and Recommendation are not well-taken and are **OVERRULED.**  The Court **ADOPTS** the Report and Recommendation.  The decision of the ALJ finding that Plaintiff

is not disabled under the Social Security regulations is **AFFIRMED.**

## I. Background

Plaintiff Aljeania S. Robinson filed a claim for disability insurance benefits and supplemental security income alleging disability based on multiple sclerosis ("MS") and asthma. Plaintiff was 35 years old at the alleged onset date of disability. Plaintiff completed high school and has an advanced degree in medical coding and billing. Plaintiff's relevant past work was a cashier/clerk, child monitor, mental retardation aide, and cleaner-housekeeper.

>Plaintiff was first diagnosed with MS in 2003. MS is:
>
>an autoimmune disorder in which the insulating sheath surrounding nerve fibers is destroyed and replaced by scar tissue, causing nerve communication to be disrupted. Symptoms, which vary widely from person to person and from stage to stage of the disease, include muscle weakness, numbness, fatigue, loss of balance, pain, and loss of bowel and bladder control. Most often the disease remits and relapses, but it may progress without remissions or with periodic plateaus or minimal improvements. No single test confirms a diagnosis, but magnetic resonance imaging can reveal the areas of scar tissue.

Young v. Apfel, 221 F.3d 1065, 1067 n.3 (8th Cir. 2000) (citing SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY 632-33 (1987), supp. at 470-71 (1992)).

The record reflects an extensive course of treatment of Plaintiff's MS and MS-related symptoms. The Court notes that in addition to substantial ongoing diagnostic testing to follow the

progression of her MS, such as MRI's, Plaintiff has been treated for or complained of dizziness and/or vertigo, lower extremity weakness and imbalance, fatigue, numbness, and loss of strength in her right hand.  Additionally, Plaintiff has been treated, and in November 2007 briefly hospitalized, for urinary urgency and retention and fecal incontinence which may be related to her MS.  Plaintiff also has constipation and uses suppositories.  Plaintiff occasionally has to self-catheterize in order to urinate.  Plaintiff has been on several medication regimens to attempt to retard the progression of the MS.  Plaintiff was on Tysabri for awhile, but her MS treating physician discontinued it because it made her nauseous.  Plaintiff then switched to Betaseron, which causes headaches as a side-effect.  Plaintiff testified, however, that the headaches are resolved with Advil.  Tr. 50-51.  Plaintiff also undergoes physical therapy and occupational therapy to improve her gait and balance.

     During the evidentiary hearing, Plaintiff testified that she needs to use a walker if she stands longer than 10 minutes. Tr. 39.  After 10 minutes, her legs become weak and she trembles and falls.  Id.  The walker she uses has wheels and a seat.  Id.  Because her house is small, Plaintiff uses a cane instead of her walker indoors.  Plaintiff uses the riding cart provided by the store when she goes grocery shopping.  Tr. 40.  Plaintiff testified that she can only sit for about 30 minutes.

Tr. 41.  She can walk without her walker about 5 yards, but with the walker, she can walk a block.  Id.  Because of lower extremity weakness, Plaintiff's right leg drags when she walks, but it appears that an ankle brace corrects this problem.  Id.; Tr. 52-54.  This problem, however, makes it more difficult for Plaintiff to climb stairs.  Tr. 42.  Plaintiff also testified that she has tingling in her right hand and she has difficulty grasping with that hand.  Tr. 42, 46.

     Plaintiff can drive occasionally but she apparently has difficulty using the brake sometimes because of her right leg weakness.  Tr. 46, 55-56.  It appears that Plaintiff can usually take care of personal grooming by herself, although she occasionally needs assistance from her daughter with her hair or fastening her clothes.  Tr. 56.  Plaintiff goes grocery shopping with help from her daughter.  She can do some dishes and laundry if her daughter carries it up and down the steps.  She does not do any vacuuming, sweeping or yard work.  Tr. 47.  Plaintiff primarily spends her days laying down, watching TV, and doing crossword puzzles.  Tr. 44.  Plaintiff testified that her most comfortable position is lying down or reclining; sitting makes her stiff and uncomfortable.  Tr. 57.  She also goes to doctors appointments and occupational therapy.  Tr. 44.

     As indicated, Plaintiff has difficulties with her bladder and bowel movements.  She testified, however, that she is

on medication for her urination problems that is "working pretty good so far."  Tr. 49.  As stated, Plaintiff uses suppositories three times a week for constipation.  Tr. 48.  Plaintiff's principal difficulties appear to be weakness and fatigue.  Tr. 56.

Dr. Jennifer Bailey completed a consultative examination of Plaintiff in June 2007.  Dr. Bailey observed that Plaintiff ambulated with a wide-legged gait but without use of ambulatory aids.  Tr. 321.  Plaintiff appeared comfortable in both the sitting and standing positions.  Id.  Plaintiff's cervical flexion was within normal limits.  Tr. 322.  Forward flexion of the extended arms and abduction of the extended arms was normal.  Muscle and grasp strength were well-preserved.  Plaintiff could bend forward at the waist to 90 degrees.  Plaintiff, however, was unable to squat or ambulate heel-to-toe due to balance problems.  Straight leg raising was normal.  Tr. 322.  Abduction and rotation of the hips were normal.  Id.  Flexion and extension of knees were normal as were flexion and dorsiflexion of the ankle.  Tr. 323.  Dr. Bailey concluded that Plaintiff can perform only a mild amount of standing and ambulating, but was incapable of even a mild amount of bending, kneeling, pushing, pulling, lifting and carrying of heavy objects.  Dr. Bailey stated, however, that Plaintiff has no difficulty sitting, reaching, grasping, and handling objects.

Id. Dr. Bailey found that Plaintiff does not have any environmental or communications limitations, although she did complain of blurred vision.

The most recent office treatment notes from Plaintiff's treating physician, Dr. Maria Melanson, are from August 2009, about two months before the evidentiary hearing before the ALJ. Tr. 604-608. Plaintiff complained that her right hand and walking had gotten worse in the last three months. Tr. 604. Plaintiff said that she could not write and was having difficulty dropping things. Id. On physical examination, Dr. Melanson noted either 4/5, 4+/5 or 5/5 strength in all of Plaintiff's upper extremities and her left lower extremity. Tr. 606. The muscle strength in Plaintiff's right lower extremity ranged from 2+/5 in the ankle to 4-/5 in knee flexion. Id. Muscle tone in all extremities was normal. Tr. 606-607. Plaintiff's coordination with both hands was normal but her gait was antalgic.[1] Tr. 607.

The ALJ also received testimony from a medical expert, Dr. Hershel Goren, and a vocational expert, Robert Breslin, during the evidentiary hearing.

---

[1] An antalgic gait is a "limp adopted so as to avoid pain on weight-bearing structures (as in hip injuries), characterized by a very short stance phase." Turner v. Commissioner of Social Sec., 267 Fed. Appx. 456, 461 n.3 (6th Cir. 2008) (quoting DORLAND'S ILLUSTRATED MEDICAL 2 DICTIONARY 764(31st ed. 2007)).

As is relevant here, Dr. Goren testified that based on his review of the medical records, Plaintiff would be restricted to lifting ten pounds occasionally and less than ten pounds frequently.  She can stand or walk for no more than two hours per day and can sit the rest of the day.  She cannot climb, use ropes, scaffolds, ramps or stairs, or balance.  Plaintiff should avoid extreme heat, concentrated fumes, and exposure to unprotected heights.  Tr. 65.  Dr. Goren emphasized that these restrictions were based on the review of the medical records and did not take into consideration Plaintiff's subjective complaints, which he left for the ALJ to evaluate.  Tr. 65-66.  On cross-examination by Plaintiff's counsel, Dr. Goren testified that Plaintiff's bladder and bowel problems are consistent with MS.  Tr. 67-68.

The ALJ posited the following hypothetical person to the vocational expert.  She is right hand dominate and has the education and past work experience of Plaintiff.  She can lift, carry, push and pull up to ten pounds occasionally and five pounds frequently.  She can stand or walk for up to two hours in an eight hour day.  However, she can only stand for ten minutes without assistance and stand or walk for only ten minutes without an assistive device.  With an assistive device, she can stand or walk for one hour at a time.  This person would need to sit for five minutes after any standing or walking.  This person is

unlimited in sitting, but she can only occasionally stoop, kneel or crouch.  This person can never crawl, balance, climb ladders, ropes, scaffolds, ramps or stairs.  She cannot work at unprotected heights or around hazardous machinery.  She cannot work in extreme heat or cold or around noxious fumes, odors dust or gasses.  Tr. 73.  The vocational expert testified that this hypothetical person would not be able to perform Plaintiff's past relevant work.  Id.  The vocational expert testified, however, that this person could perform unskilled, sedentary work such as order clerk, final assembler, and visual inspector.  Tr. 73-74.  The vocational expert testified that there are a substantial number of these jobs available in the local and national economies.  If, however, the hypothetical person needs to miss two or three days of work per month, the vocational expert testified that she would not be able to maintain employment.  Tr. 74.

After the evidentiary hearing concluded, Plaintiff submitted to the ALJ a list of her medical appointments and treatments from March 2007 through August 2009.  Tr. 236-238.  Plaintiff argued that the frequency of her appointments showed that she would miss more than two or three days or work per month, and, hence, would be unemployable according to the vocational expert's testimony.

On November 12, 2009, the ALJ issued a decision finding that Plaintiff is not disabled under the Social Security regulations. At the first and second steps of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in any substantial gainful activity since her alleged onset date of disability and that she has severe impairments of MS and asthma. At the third step, the ALJ found that her impairments or combination impairments does not meet or equal a listing. Tr. 15-17.

The ALJ next found that Plaintiff has the residual functional capacity ("RFC") of the hypothetical person as given to the vocational expert during the evidentiary hearing. Tr. 18. In arriving at this RFC, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but discounted Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms. Tr. 19. The ALJ noted that according to the medical expert, Plaintiff's August 2009 physical examination was "close to normal." Id. The ALJ also indicated instances in the record where Plaintiff did not need any ambulatory aids. Id. The ALJ also noted that Dr. Melanson's most recent examination did not indicate any work-related impairment with Plaintiff's right hand. Id.

9

The ALJ also rejected Plaintiff's contention that she would miss two or three days of work per month because of her impairments or medical treatments.  Tr. 20.  The ALJ found that the list provided by Plaintiff's attorney showed that there were some months when she did not require any treatment.  The ALJ also found that in some months, Plaintiff required treatment for conditions not related to her MS, such as visits to the dermatologist for thinning hair, and to the OB/GYN.  The ALJ also noted Plaintiff's treatments for bladder and bowel problems, but stated that "it cannot be definitely concluded that each such problem was secondary to multiple sclerosis."  Tr. 20.  Finally, the ALJ stated that it was not clear that all of Plaintiff's medical appointments would have required missing work.  He noted for instance, that Plaintiff might have been able to schedule her physical therapy appointments during non-work hours.  Id.

At the fourth step, the ALJ determined that Plaintiff's RFC precluded her from performing her past relevant work. Tr. 20. At the fifth step, however, the ALJ relied on the vocational expert's testimony to conclude that there are a substantial number of unskilled, sedentary jobs available in the national economy that Plaintiff can perform with her RFC.  Tr. 21-22. Accordingly, the ALJ determined that Plaintiff is not disabled under the Social Security regulations and denied her claim for benefits.  Tr. 22.

The Appeals Council denied Plaintiff's petition for review of the ALJ's decision, making that decision the final decision of the Commissioner of Social Security.  Plaintiff filed a timely complaint for review of the ALJ's decision.  Plaintiff raised three assignments of error in her Statement of Specific Errors: 1) the ALJ erred in failing to consider the effect of her bladder and bowel impairments on her ability to work; 2) the ALJ erred in concluding that the amount and frequency of Plaintiff's medical treatments would not cause to miss two or three days of work per month; and 3) the ALJ erred in determining that her subjective complaints were not credible.

Judge Bowman rejected each of Plaintiff's assignments of error in her Report and Recommendation.  Judge Bowman determined that the ALJ did consider Plaintiff's bladder and bowel problems when discussing her medications.  Judge Bowman also noted the absence of any indication in the record that Plaintiff's bladder and bowel problems impose any work-related restrictions.

Judge Bowman next determined that the ALJ's conclusion about absenteeism was supported by substantial evidence.  Judge Bowman noted that there were no medical source opinions about the likelihood of absenteeism caused by Plaintiff's impairments and that the ALJ's assessment that her past history of medical

11

treatments did not necessarily indicate the need for treatment during working hours.

Finally, Judge Bowman determined that the ALJ's adverse credibility determination was supported by substantial evidence. Judge Bowman noted that the medical expert testified that Plaintiff's most recent physical examination was "close to normal." Judge Bowman also noted that Plaintiff's testimony was inconsistent concerning her need to use a walker. In any event, Judge Bowman observed that the ALJ partially credited Plaintiff's testimony by including a limitation that she needs a walker or other assistive device for significant exertion. Judge Bowman concluded that the medical records, expert testimony, and even Plaintiff's testimony were sufficient to support the ALJ's credibility determination.

Judge Bowman, therefore, recommended that the ALJ's decision be affirmed and this case be closed on the docket of the Court. Plaintiff filed timely objections to Judge Bowman's Report and Recommendation which are ready for disposition.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ. See 42 U.S.C. § 405(g). The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision. "Substantial evidence means more than a mere

scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Sec'y of Health & Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Id. Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury. Id. If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Sec'y of Health & Human Serv., 658 F.2d 437, 439 (6th Cir. 1981). The district court reviews de novo a magistrate judge's report and recommendation regarding social security benefits claims. Ivy v. Sec'y of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

### III. Analysis

Plaintiff's objections to the Report and Recommendation essentially reiterate her statement of specific errors. The Court takes up these issues seriatim.

#### A. Plaintiff's Bladder and Bowel Impairments

Plaintiff first contends that the ALJ failed to take into consideration her bladder and bowel impairments in his disability analysis. The ALJ did not find that Plaintiff's

bladder and bowel impairments are severe under the Social Security regulations.  Once, however, an ALJ finds that the claimant has a severe impairment at step two of the analysis, he must consider the combined effect both the claimant's severe and non-severe impairments in developing the claimant's RFC.  <u>Simpson v. Commissioner of Social Sec.</u>, 344 Fed. Appx. 181, 191-92 (6th Cir. 2009).

The Court finds that the ALJ did consider the combined effect of Plaintiff's impairments.  For instance, at the third step, the ALJ specifically stated that Plaintiff does not have impairment or combination of impairments that meets a listing.  Tr. 17.  This statement is generally sufficient to indicate that the ALJ considered the combined effect of all the claimant's impairments.  <u>Gooch v. Sec'y of Health & Human Serv.</u>, 833 F.2d 589, 591-92 (6th Cir. 1987).  Moreover, as Judge Bowman observed, there is no evidence in the record that Plaintiff's bladder and bowel impairments have any effect on her ability to work. Plaintiff testified that the medication for her bladder problem "works pretty good."  While Plaintiff uses suppositories for constipation, she did not any identify specific problems that this impairment creates vis-á-vis her ability work.  Certainly there are no medical opinions in the record that Plaintiff's bladder and bowel problems limit her ability to work.  The Court, therefore, finds no error in the ALJ's resolution of Plaintiff's

14

bladder and bowel impairments.  Compare with Nejat v. Commissioner of Social Sec., 359 Fed. Appx. 574, 577 (6th Cir. 2009) (ALJ did not err in failing to consider claimant's claimed obesity where there was scant evidence of obesity in the record).

Accordingly, this objection is not well-taken and is **OVERRULED.**

### B. Absenteeism

Plaintiff next contends that the ALJ erred in concluding that she would not experience excessive absenteeism due to her medical treatment for MS which in turn would render her unemployable.  As Plaintiff correct points out, in developing the claimant's RFC, SSR 96-8p requires the ALJ to consider "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)[.]"  Like Judge Bowman, however, the Court finds that the ALJ's decision that Plaintiff's need for treatment would not subject her to excessive absenteeism was supported by substantial evidence.

First, as the ALJ found, many of the records Plaintiff cited to establish excessive absenteeism were not related to any condition on which her disability claim is founded.  For instance, Plaintiff had a number of visits to the dermatologist and to her OB/GYN.  Tr. 369, 370, 421, 423, 426, 555-560.

15

Additionally, while Plaintiff had many past office or hospital visits for treatment for her bladder and bowel problems, these impairments now seem to be more or less stabilized. Therefore, the record does not establish that Plaintiff will need the frequency of treatment for these impairments going forward that she experienced in the past. Indeed, Plaintiff testified that she now sees her MS treating physician and her bladder treating physician only once every three months. Tr. 58-59.

Second, the ALJ's conclusion that Plaintiff's need for treatment would not necessarily interfere with working is also supported by the record. As just stated, it appears that the Plaintiff now only requires quarterly follow-up visits for her impairments, which would not seem to create an absenteeism problem. Moreover, there is no evidence that Plaintiff's need for treatment and therapy would necessarily require missing a full day of work. For instance, Plaintiff testified that her physical therapy and occupational therapy sessions typically only last about an hour. Tr. 45.

The ALJ's conclusion that Plaintiff would not experience excessive absenteeism due to the frequency of her medical treatments was supported by substantial evidence. Accordingly, this objection is not well-taken and is **OVERRULED.**

### C. Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ erred in assessing her credibility. More specifically, Plaintiff contends that the ALJ should have found her to be credible about the limitations imposed by her impairments. She cites numerous instances in the record substantiating that her complaints are consistent with MS. An ALJ's credibility determinations are entitled to substantial deference and will not be overturned lightly. Hardaway v. Sec'y of Health & Human Serv., 823 F.2d 922, 928(6th Cir. 1987); Houston v. Sec'y of Health & Human Serv., 736 F.2d 365, 367 (6th Cir. 1984).

In arguing that the ALJ erred in assessing her credibility, Plaintiff seems to be saying that she was credible simply because her complaints are consistent with someone suffering from MS. See Doc. No. 12, at 5 ("Plaintiff's subjective complaints . . . are consistent with the symptoms typically associated with MS[.]"). The issue, however, is not whether Plaintiff's subjective complaints are consistent with the symptoms of MS. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (stating that the diagnosis of a condition says nothing about its severity) ; 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled[.]"). Rather, the issue is the effect of Plaintiff's MS on her ability to work. 20 C.F.R. §

17

404.1545(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations.").  The ALJ in this case did not find that Plaintiff does not suffer from MS.  To the contrary, he found only that Plaintiff's subjective complaints about the limitations imposed by her MS were not fully credible.

The Court finds that the ALJ's credibility determination was supported by substantial evidence.  As indicated above, the ALJ did credit Plaintiff's testimony to the extent he included in his RFC her need to use an assistive device to stand or walk more than 10 minutes.  Plaintiff's most recent physical examination was essentially normal, except for her right lower extremity weakness, which the ALJ took into account by including her need for an assistive device.  Additionally, the ALJ's credibility assessment was supported by the opinions of the consultative examiner, Dr. Bailey, and the medical expert, Dr. Goren, who provided RFC's that were slightly less restrictive than the one the ALJ eventually adopted.  Walters v. Commissioner of Social Sec., 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

Accordingly, Plaintiff's objection to the ALJ's credibility determination is not well-taken and is **OVERRULED.**

<u>Conclusion</u>

For the reasons stated, Plaintiff's objections to Magistrate Judge Bowman's Report and Recommendation are not well-taken and are **OVERRULED.** The Court **ADOPTS** the Report and Recommendation. The ALJ's determination that Plaintiff is not disabled under the Social Security regulations is **AFFIRMED. THIS CASE IS CLOSED.**

**IT IS SO ORDERED**

Date December 14, 2011          s/Sandra S. Beckwith
                                Sandra S. Beckwith
                        Senior United States District Judge